UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ARTHUREE GADSDEN,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                       17-CV-5829 (PKC)(SJB)

       - against-

NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY, KAREN
PRIMACK, REBECCA FRALEY-
CORRADO, and JOHN and JANE DOE
(said names being fictitious, the persons
intended being those who aided and abetted
the unlawful conduct of the named
Defendants),

                Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Arthuree Gadsden brings this action against Defendants New York City School Construction Authority (the "SCA"), Karen Primack, Rebecca Fraley-Corrado, and John and Jane Doe, alleging that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Family Medical Leave Act ("FMLA"), 42 U.S.C. § 1981(a) ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), the New York Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). For the reasons stated herein, Defendants' motion to dismiss is granted as to Plaintiff's discrimination claims under Title VII, the ADA, and the Rehabilitation Act; her retaliation claims under these Acts and her FMLA claims, however, will go forward. Plaintiff's claims pursuant to sections 1981 and 1983 are dismissed in their entirety. Defendants' motion to dismiss the SCA is denied.

## BACKGROUND

I.   **Relevant Facts**[1]

Plaintiff is a fifty-five-year-old African American female who has been employed by the SCA[2] since June 2005.  (Amended Complaint ("Am. Compl."), Dkt. 16, at ¶¶ 10-11.)  Plaintiff has dysthymic disorder, which is "a chronic, low-grade depression", presenting with symptoms including "a low mood, irritability, excessive anger, fatigue, hopelessness, difficulty concentrating, decreased productivity, feelings of incapability and problems with sleep and appetite."  (*Id.* at ¶¶ 23-24.)  Defendants were aware of Plaintiff's condition during the relevant period.  (*Id.* at ¶ 25.)

From June 2005 until September 2014, Plaintiff worked as an Administrative Assistant, and in October 2014, became an Administrative Associate in Human Resources.  (*Id.* at ¶¶ 11, 27-35.)  In December 2015, Defendant Karen Primack, a white female, became Senior Director of the Office of Human Resources & Labor Relations (the "HR Office") at the SCA.  (*Id.* at ¶¶ 14-15, 37.)  According to Plaintiff, "[i]mmediately upon arrival", Primack "singled Plaintiff out for disparate treatment", subjected her to "amplified oversight", and made "the repeated charge that [Plaintiff's] work was inadequate", despite the fact that Plaintiff had previously been "recognized as a superior employee."  (*Id.* at ¶¶ 38-39; *see also id.* at ¶¶ 29, 33-34, 46 (describing Plaintiff's prior positive evaluations).)   Plaintiff alleges that this "excessive criticism" and "increased scrutiny" was not "otherwise leveled at similarly situated white employees."  (*Id.* at ¶ 46.)  Furthermore, Plaintiff alleges that Primack held one-on-one meetings with white and non-minority

---

[1] These facts are based on Plaintiff's Amended Complaint, the allegations of which the Court accepts as true for purposes of Defendants' motion.  (Dkt. 16.)

[2] The SCA is a "public benefit corporation existing under and by virtue of the laws of the State of New York[.]"  (Am. Compl. ¶ 13.)

2

employees in Plaintiff's department, but "intentionally avoided" meeting with Plaintiff, and cancelled Plaintiff's one-on-one meeting three times. (*Id.* at ¶¶ 41-42.) Primack also began questioning other HR employees about why Plaintiff was in the department "as part of her plan to remove Plaintiff or dig up dirt on her." (*Id.* at ¶ 43.)[3]

In March 2016, Plaintiff began taking intermittent FMLA leave due to the worsening of her dysthymic disorder, which resulted in Plaintiff's disparate treatment being "exacerbated." (*Id.* at ¶ 47.) On or around August 11, 2016, Primack "suddenly" convened a meeting with Plaintiff—her "first meaningful conversation with Plaintiff"—to discuss an alleged confrontation between Plaintiff and a co-worker, Ronetta Coleman-Morse, regarding coverage of the HR's front desk. (*Id.* at ¶¶ 50-51.) According to Plaintiff, Primack had "eavesdropped and misinterpreted the conversation between Plaintiff and Coleman-Morse, accused Plaintiff of disrespectful behavior, intentionally refused to ask Coleman-Morse to clarify what had happened, although such facts were easily accessible to Primack, and threatened Plaintiff with formal discipline." (*Id.* at ¶ 51.) The next day, Plaintiff complained (although the complaint does not say to whom) about being threatened with discipline, "said she felt harassed", and also requested to transfer to another SCA unit. (*Id.* at ¶¶ 52-53.) On August 18, 2016, Primack told Plaintiff that there would be another meeting on August 31, 2016, which Primack claimed was not disciplinary, but included the manager of Labor Relations and two union representatives. (*Id.* at ¶ 54.)[4]

---

[3] Plaintiff also makes an allegation regarding Primack's friendship with Barbara Gavosto, another SCA employee. Plaintiff states that she "did not believe [Gavosto] liked black people" and that Plaintiff told someone about her suspicions. However, because there is a missing word in paragraph 44 of the Amended Complaint, it is not clear to whom Plaintiff complained about Gavosto. (*Id.* at ¶ 44.)

[4] Per the collective bargaining agreement between Plaintiff's union and the City of New York, the presence of an employee's union representative is required at meetings where the employee may be formally reprimanded or issued disciplinary charges. (*Id.* at ¶ 55.)

3

At the August 31, 2016 meeting, despite assuring Plaintiff that the meeting was not disciplinary, Primack issued Plaintiff a "counseling memorandum"[5], which directed Plaintiff to take a number of steps to "act and react professionally," and which was permanently placed in her personnel file. (*Id.* at ¶¶ 49, 56.) This was the first and only time Plaintiff was disciplined since joining the HR Office in 2012. (*Id.* at ¶ 59.) The counseling memorandum cited Plaintiff for the following: "(1) having 'verbal outbursts' where Plaintiff allegedly cursed; (2) being disrespectful toward her supervisor, [Steven] Choi, by talking to him from her cubicle instead of walking into his office . . . ; and (3) having 'overly confrontational' and 'aggressive' discussions with her co-workers." (*Id.* at ¶ 58.) On September 1, 2016, Plaintiff submitted a rebuttal, explaining that while she swore "on the rare occasion," it was "commonplace in HR that employees swore" and that "the overall working environment that existed in her unit at SCA included swearing and subordinates speaking to their supervisors from cubicles due to their respective close physical proximity to each other." (*Id.* at ¶¶ 60, 63-64.) Plaintiff also stated that she was "perplexed" about being called "overly confrontational" and "aggressive" since she had only spoken with Primack once before, on August 11, 2016, aside from "occasional greetings." (*Id.* at ¶ 65.)[6]

On September 6, 2016, Plaintiff emailed Primack and copied Defendant Rebecca Fraley-Corrado, the Vice President of the SCA and Primack's direct supervisor, to again complain that the counseling memorandum was false and request a transfer. (*Id.* at ¶¶ 14, 17, 68.) Defendants

---

[5] A counseling memorandum is a form of discipline used throughout City agencies and municipal entities. (*Id.* at ¶ 57.)

[6] Plaintiff states that the "occasional greetings" included Primack complimenting Plaintiff when Plaintiff "would cover her natural black hair or her braided, dreadlock style hair with a wig of straight 'Caucasian' hair." (*Id.* at ¶ 66.) However, Plaintiff says that Primack "never complimented Plaintiff's natural black or braided hair typical of African American women's style." (*Id.* at ¶ 67.)

4

ignored her request. (*Id.* at ¶ 69.) Two days later, on September 8, 2016, Plaintiff told Primack and Fraley-Corrado that she intended to file a discrimination charge with the U.S. Equal Employment Opportunity Commission, "due to their disparate treatment of her." (*Id.* at ¶ 70.) On September 13, 2016, during a staff meeting, Primack told employees, including Plaintiff, that "H.R. is a confidential office" and that "people have been fired for talking about what goes on with employees in H.R." (*Id.* at ¶ 71.) Primack further stated, "going forward, you are not to speak about anything in the H.R., and that includes your own case, and not even to your friends are you allowed to tell what it is that you are going through in H.R." (*Id.* at ¶ 72.) On September 19, 2016, Plaintiff's employment was terminated by Primack and Fraley-Corrado. (*Id.* at ¶¶ 73-74.) Following her termination, Plaintiff's union filed a grievance on her behalf. (*Id.* at ¶ 80.) On January 5, 2018, Plaintiff prevailed in an arbitration proceeding, which found that Defendants "had violated Plaintiff's civil service rights by terminating her without due process." (*Id.* at ¶ 81.) Plaintiff was awarded reinstatement to her permanent position of Administrative Assistant along with back-pay and other benefits. (*Id.*)

## II. Procedural History

Plaintiff filed her initial complaint in this action on October 5, 2017 and her amended complaint on February 2, 2018. (Dkts. 1, 16.) She brings the following claims against the SCA only: (1) Title VII discrimination and retaliation; (2) ADA discrimination and retaliation; (3) FMLA retaliation; and (4) Rehabilitation Act discrimination and retaliation. She brings the following claims against all Defendants: (1) Section 1981 and 1983 discrimination and retaliation; (2) NYSHRL discrimination and retaliation; and (3) NYCHRL discrimination and retaliation. Defendants filed their partial motion to dismiss on February 26, 2018. (Dkt. 20.)

5

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## DISCUSSION

Defendants have moved to dismiss on four grounds. First, Defendants move to dismiss Plaintiff's Section 1981 claims as duplicative of her Section 1983 claims, as well as for failure to state a claim. Second, Defendants move to dismiss Plaintiffs' discrimination claims under Title VII, the ADA, and the Rehabilitation Act. Third, Defendants move to dismiss Fraley-Corrado as a defendant for failure to allege personal involvement. Finally, Defendants move to dismiss the SCA as a defendant for insufficient service of process.

### A. Section 1981/1983

As an initial matter, Defendants argue that Plaintiff's Section 1981 claims should be dismissed as duplicative of her section 1983 claims. (Defendants' Brief, Dkt. 21, at 4.) The Court agrees. "[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983." *Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010). "[T]he Court notes that where defendants are state actors, Section 1983, not Section 1981, is the appropriate vehicle through which a plaintiff may pursue discrimination claims for damages." *Zaniewska v. City of N.Y.*, No. 11-CV-2446 (RRM)(VVP), 2013 WL 3990751, at *8 (E.D.N.Y. Aug. 5, 2013), *aff'd*, 569 F. App'x 39 (2d Cir. 2014); *see also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989) ("We hold that the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.") (internal quotation marks omitted). "The holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are state actors." *Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 400-401 (S.D.N.Y. 2008) (internal quotation marks omitted); *Bamba v. Fenton*, No. 15-CV-1340(JS)(AKT), 2017 WL 3446806, at *10 (E.D.N.Y. Aug. 10, 2017) (collecting cases). Therefore, Plaintiff's Section 1981 claims are dismissed and the Court will resolve Plaintiff's Section 1981 claims pursuant to Section 1983 standards.

To sustain a § 1983 claim, "a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015). Plaintiff's complaint does not identify the constitutional

right that she claims the individual Defendants violated.[7]  Since Plaintiff does not allege a constitutional violation, Plaintiff's Section 1983 claim must be dismissed as a matter of law.[8]

### B. Title VII, ADA, and Rehabilitation Act

To succeed on a claim of discrimination under Title VII, the ADA, and the Rehabilitation Act, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  To do this, the plaintiff must show that "(1) [she] was within the protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (Title VII); *see also Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005) (ADA/Rehabilitation Act).  However, at the pleading stage, a plaintiff asserting discrimination claims "need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss." *Powell v. Dep't of Educ. of City of N.Y.*, No. 14-CV-2363 (PKC), 2015 WL 5772211, at *5 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks and citation omitted).  "Rather, the plaintiff need only allege a plausible claim upon which relief may be granted." *Kelly v. N. Shore-Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 285 (E.D.N.Y. 2016).

---

[7] Rather, Plaintiff's counsel clarifies, in opposing Defendants' motion, that "Plaintiff is *not* bringing an Equal Protection claim" because "[t]hat would be duplicative of the Section 1981 claim in this case." (Plaintiff's Brief, Dkt. 23, at 13 (emphasis added).)  The Court notes, however, that this statement reflects a misapprehension of the law.  Section 1981 and Equal Protection claims are not necessarily duplicative. *See, e.g.*, *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (noting that a discrimination claim may be brought under "the Fourteenth Amendment Equal Protection Clause *and*/or § 1981") (emphasis added).

[8] In light of this holding, the Court need not address the sufficiency of the allegations regarding Defendant Fraley-Corrado's personal involvement in the alleged discrimination.

Here, even under the less demanding pleading standard, Plaintiff's complaint fails to plausibly allege that she suffered an adverse employment action with respect to her discrimination claims. An adverse employment action includes "materially adverse change[s] in the terms and conditions of employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation," or "refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Plaintiff's single negative evaluation, *i.e.*, the August 31, 2016 disciplinary memorandum, is not sufficient to establish an adverse employment action. While "negative employment evaluation letters" may be considered adverse employment actions, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), that is not the case where there is "no proof that this evaluation had any effect on the terms and conditions of [Plaintiff's] employment," *Sanders*, 361 F.3d at 756; *see also Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011); *Jantz v. Emblem Health*, No. 10-CV-6076 (PKC), 2012 WL 370297, at *9 (S.D.N.Y. Feb. 6, 2012) ("[N]egative evaluations without accompanying adverse results are not sufficient to constitute adverse employment actions."). Although Plaintiff's Amended Complaint alleges that her subsequent termination was "motivated by invidious stereotyping" (Am. Compl. ¶ 65), this single conclusory assertion is insufficient to state a discrimination claim.[9] Therefore, Plaintiff's claims of discrimination under Title VII, the ADA, and the Rehabilitation Act are dismissed.

---

[9] Rather, it is clear that Plaintiff is actually alleging that she was terminated "in obvious retaliation for [her] complaints of discrimination". (*Id*. at ¶ 60-67.)

9

### C. Insufficient Service of Process

Defendants argue that the SCA should be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(5) for insufficient service of process and thus lack of personal jurisdiction. This claim is denied in light of the fact that the SCA was added as a defendant for the first time on February 2, 2018 (Dkt. 16) and that a summons was issued only forty-nine days later to SCA on March 23, 2018 (Dkt. 25). "Even in the absence of good cause[,] . . . district courts have discretion to grant extensions of time to effect proper service." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016); *see also Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007); *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order) ("Although an extension of time is required when good cause has been shown, a district court has wide latitude in deciding when to grant extensions absent good cause.") (internal citation omitted).

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted as to Plaintiff's discrimination claims under Title VII, the ADA, and the Rehabilitation Act; Plaintiff's retaliation claims under these Acts will proceed. Plaintiff's claims pursuant to sections 1981 and 1983 are dismissed in their entirety. Defendants' motion to dismiss Defendant the SCA is denied.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: April 18, 2018
Brooklyn, New York